UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES TALBERT, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:21-1906 |
| v. | : | (JUDGE MANNION) |
| COMM. OF PA, *et al.*, | : | |
| Defendants | : | |

# MEMORANDUM

## I. BACKGROUND

Plaintiff, Charles Talbert, an inmate confined at the State Correctional Institution, Camp Hill ("SCI-Camp Hill"), Pennsylvania, filed the above caption civil rights action, pursuant to 42 U.S.C. §1983. (Doc. 1). He challenges his detention at SCI-Dallas during the COVID-19 pandemic, claiming that due to his underlying health issues he should have been included in the "Reprieve of Sentence Incarceration Program," previously in effect, that provided that certain vulnerable inmates could be released due to the pandemic so long as they met certain criteria, including being "within nine months of their minimum eligibility release date." Id. The named Defendants are the Commonwealth of Pennsylvania and Governor Tom Wolf. Id.

Presently before the Court is the Defendants' motion to dismiss Plaintiff's complaint. (Doc. 15). The motion is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion to dismiss.

**II. ALLEGATIONS IN COMPLAINT**

Plaintiff alleges that "at, and during the time of the COVID outbreak and emergency disaster in Pennsylvania, [he] was in the custody of the State and Wolf, within its DOC state correctional institutions, and has suffered from the following underlying serious health conditions:

    A. high blood pressure
    B. chronic asthma
    C. Angina
    D. Antisocial personality disorder
    E. Bipolar.

(Doc. 1). He claims that "pursuant to the WHO, CDC and DHS, inmates like Plaintiff, with the aforesaid underlying serious health issues, specifically A though C, were more at serious risk of serious bodily injury and death if infected with COVID." Id. He states, "[h]owever, despite the Defendants aforesaid duty and obligations to Plaintiff, pursuant to Article IV, Section 2 of the State Constitution, and the Emergency Management Services Code, the State and Wolf breached their aforesaid duties and legal obligations by way of:

- 2 -

> A. Depriving Plaintiff protection of his safety and welfare during the disaster emergency caused by the COVID outbreak.
>
> B. Failing to exercise its power to remove Plaintiff from the disaster area within the DOC where the outbreak infected thousands and killed serval from those employed by the State.
>
> C. Failing to exercise the law of the State faithfully, and in a manner in which protected the Plaintiff's health, safety, and welfare.
>
> D. Failing to utilize the criminal justice system during the emergency disaster caused by COVID and direct the PPD to parole Plaintiff since he was not on death row or serving life.

Id. Plaintiff believes that "as a result of these aforesaid breaches, the Defendants enforced contrary executive orders, and failed to act, which was contrary to public law and policy and thus, jeopardized Plaintiff's health, safety and welfare during the emergency disaster." Id.

By November, 2020, Plaintiff claims that he "began to experience symptoms of COVID, due to the aforesaid dangerous State owned institutions such as:

> A. loss of smell and taste
> B. blurred vision
> C. migraine headaches
> D. breathing complications (shortness of breath)
> E. chest and lung pain
> F. known and unknown health (short and long term) conditions.

Id. Plaintiff states that he "was seen and treated while at SCI-Dallas for some of his COVID symptom, to which Plaintiff still suffers from others." Id.

- 3 -

Plaintiff alleges that Defendants "on or about April 10, 2020 had established and maintained a discriminative and gross negligent executive order, in the form of a reprieve of sentence of incarceration program by only considering, inter alia, the inmate's minimum eligibility release date, which had to be within 9 months from the date of the order." Id. Plaintiff claims that "even though [he] was not 9 months away from reaching his minimum eligibility release date, nevertheless, he did not have a life sentence or sentenced to death row and public policy and law with the Emergency Code intended for inmates with short sentences, in emergency disaster situations and circumstances to be released early, especially those at risk due to serious underlying health conditions." Id.

Plaintiff alleges that Defendants "failed to allocate CARES Act funding for the safe removal of inmates from the emergency disaster area" and "showed more concern to the economic and government operations such as DOC official payrolls, substantially failing to prioritize the use of its various statutory and constitutional authorities to grant Plaintiff home confinement." Id.

Thus, Plaintiff files the instant action for damages and injunctive relief, alleging negligence, violations of the Pennsylvania State Constitution, the

Equal Protection Clause, the Americans with Disabilities Act, and the Rehabilitation Act. Id.

## III. Motion to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension

Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

IV. **DISCUSSION**

    **A. Defendant Wolf**

Plaintiff names Governor Wolf as a Defendant, noting that he was personally involved by ordering all state prisons to lockdown and impose restrictions because of the COVID-19 pandemic. (Doc. 1). Plaintiff's allegations, however, are insufficient to plead personal involvement. In Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988), the Third Circuit stated: "In a large state employing many thousands of employees, a contrary holding [concluding that the Governor has personal knowledge] would subject the

Governor to potential liability in any case in which an aggrieved [individual] merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office." See also Christian v. Garman, No. 1:20-cv-1842, 2021 WL 1017251, at *3 (M.D. Pa. Mar. 17, 2021) (Governor dismissed where the inmate-plaintiff alleged that he was personally involved by ordering all state prisons to lockdown because of COVID-19); Hampton v. Wetzel, No. 1:15-cv-897, 2015 WL 2405062, at *2 (M.D. Pa. May 20, 2015) (Governor dismissed where the inmate-plaintiff "merely allege[d] that he sent letters to defendants Corbett and Wolf expressing his dissatisfaction with the DOC and the parole board"). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's claims against Defendant Wolf.

### B. Commonwealth of Pennsylvania

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Eleventh Amendment bars suits against a state in federal court when the state has not waived that immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989). The Commonwealth of Pennsylvania has not waived that immunity here. See 42 Pa. Cons. Stat. §8521(b). Additionally, the

Commonwealth is not considered a "person" for purposes of §1983. See Will, 491 U.S. at 69.

For these reasons, Talbert cannot state a §1983 claim against the Commonwealth of Pennsylvania. Eleventh Amendment immunity also precludes Talbert from asserting his negligence claim against the Commonwealth in federal court. See Brooks v. Beard, 167 F. App'x 923, 926 (3d Cir. 2006) (*per curiam*) (noting, with regard to inmate's negligence claims, that "the state has expressly retained its Eleventh Amendment immunity for purposes of federal lawsuits").

### C. Fourteenth Amendment Claim

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a

"class of one" equal protection claim. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. See id. "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . .were treated in a dissimilar manner" will not suffice. See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).

Here, Plaintiff alleges that Defendants "treated Plaintiff differently" than others who were released under the Governor's Order of Reprieve[1] when they failed to release him early under the program. (Doc. 1). Plaintiff,

---

[1] See **ORDER OF THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA REGARDING INDIVIDUALS INCARCERATED IN STATE CORRECTIONAL INSTITUTIONS**
https://www.governor.pa.gov/wp-content/uploads/2020/04/20200410-GOV-DOC-reprieve-release-order-COVID-19.pdf

himself, however, admits that he did not meet the nine-month grace period required for early release consideration under the Order. Id. Nor is there any indication that Plaintiff satisfied any other prerequisite either. Thus, Plaintiff's own complaint demonstrates that he is not similarly situated to the population of which he wishes to be treated akin. Consequently, his equal protection claim, fails on the face of the Complaint.

### D. ADA and RA Claims

Plaintiff claims that Defendants "deprived [him] the opportunity to benefit from the Emergency Management Services Code and Reprieve Program for early release through a substantial showing of discrimination." (Doc. 1).

Plaintiff's ADA and RA claims will be considered together because "the substantive standards for determining liability are the same." Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 288 (3d Cir. 2019) (citation omitted). To prevail on his claims under Title II of the ADA and Section 504 of the RA, Plaintiff must show: (1) "he is a qualified individual with a disability"; (2) he "was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination"; (3) "by reason of his disability." Id. at 288–89; 42 U.S.C. §12133.

Here, Plaintiff is not a qualified person. His own allegations reveal that

he did not meet the baseline criteria for the program, applicable to all, which was an inmate within nine months of their minimum eligibility release date. As such, he cannot demonstrate that he was excluded from the early release reprieve by reason of a disability. Furgess, 933 F.3d at 288-89. And given that the Plaintiff is now incarcerated at a different institution—SCI-Camp Hill—his remaining ADA and RA claims are now moot, as "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003)(citation omitted).

### E. Claims Pursuant to the Pennsylvania Constitution

Plaintiffs also seek damages based on Defendants' alleged violations of Article IV, section 2 of the Pennsylvania Constitution. (Doc. 1). As the Third Circuit has recognized, however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011). Accordingly, the Court will dismiss Plaintiff's claims pursuant to the Pennsylvania Constitution.

### F. State Law Claims

Defendants assert that the Court should decline to exercise supplemental jurisdiction over any state law claims raised by Plaintiffs. (Doc.

17 at 9.) When a district court has dismissed all claims over which it had original jurisdiction, as is the case in the above-captioned action, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. See 28 U.S.C. §1367(c)(3). The Court's decision regarding the exercise of supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity." See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. See id. In the absence of a viable federal claim and finding nothing to distinguish this matter from the ordinary case, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See id. at 350 n.7. Accordingly, the Court will dismiss Plaintiff's state law claims against Defendants pursuant to 28 U.S.C. §1367(c)(3).

### G. Motions for Preliminary Injunction

Also pending before the Court are Plaintiff's motion for temporary restraining order and motion for preliminary injunction in which Plaintiff requests the Court "order the Commonwealth to send Plaintiff to a nearby hospital to be assessed, diagnosed and treated by a lung and heart specialist

for his severe symptoms caused by COVID-19" (Doc. 8) and for an Order "directing Plaintiff to be immediately released onto home confinement supervision and/or parole due to COVID-19 risks." (Doc. 13).

In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: "1) a likelihood of success on the merits; 2) he or she will suffer irreparable harm if the injunction is denied; 3) granting relief will not result in even greater harm to the nonmoving party; and 4) the public interest favors such relief." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010) (quoting Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010) ). See also Fed. R. Civ. P. 65. Because a preliminary injunction is an extraordinary remedy, the party seeking it must show, at a minimum, a likelihood of success on the merits **and** that they likely face irreparable harm in the absence of the injunction. See Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000); Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989). Where the requested preliminary injunction "is directed not merely at preserving the *status quo* but ... at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Thus, a request for any form of mandatory prospective relief in the prison context "must always be viewed with great caution because judicial restraint

is specially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995).

Here, Plaintiff's complaint alleges that he contracted COVID-19 while confined at SCI-Dallas. (Doc. 1 at 5). He states that he was "seen and treated at SCI-Dallas" for his COVID-19 symptoms. Id. To prevail on an Eighth Amendment claim for inadequate healthcare, an inmate must demonstrate that the defendant was "deliberately indifferent" to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). As such he has failed to show the likelihood of success on the merits.

Subsequent to his diagnosis, Plaintiff was transferred to SCI-Camp Hill. To the extent that he has requested and been denied medical treatment for his COVID-19 symptoms by SCI-Camp Hill employees, Plaintiff is free to file a separate action raising such allegations against those individuals, as the instant action does not relate to any individual at his current place of confinement. In other words, "there must be a connection between the underlying complaint and the relief requested in the motion for a preliminary injunction." James v. Varano, 2017 WL 895569, at *3 (M.D. Pa. Mar. 7, 2017) (citing Ball v. Famiglio, 396 Fed. Appx. 836, 837 (3d Cir. 2010) ). A district court "should not issue an injunction when the injunction in question is not of the same character and deals with a matter lying wholly outside the issues

in the suit." Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997) (citing De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945) ).

Additionally, it is axiomatic that a request for immediate release from prison may only be made by way of a petition for writ of habeas corpus rather than a civil rights action. Black v. Moser, 2018 WL 3239775, at *1 (M.D. Pa. July 3, 2018) ("It is well-settled that inmates may not use civil rights actions to challenge the fact or duration of their confinement or to seek earlier or speedier release.") (citing Preiser v. Rodriguez, 411 U.S. 475 (1975) ). As explained by the United States Supreme Court, when a prisoner seeks "immediate release or a speedier release from [his] imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser, 411 U.S. at 500. Plaintiff's request for an immediate release from prison is simply not cognizable in an action pursuant to 42 U.S.C. §1983. As such, his motions for preliminary injunction will be denied.

## V. <u>Leave to Amend</u>

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the Plaintiff's §1983 claims against the named Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Plaintiff's complaint.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 22, 2022**
21-1906-01